1

2

3

4

5

6

7

8

9
UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10

11 | ALFRED BANKS,                              )   Civil No. 10cv1886 AJB (CAB)
                                              )
12 |               Plaintiff,                  )   **ORDER GRANTING MOTIONS TO**
                                              )   **DISMISS SECOND AMENDED**
13 |                                           )   **COMPLAINT; GRANTING MOTION**
       v.                                      )   **TO COMPEL ARBITRATION;**
14 |                                           )   **GRATING EX PARTE APPLICATION;**
                                              )   **AND DENYING MOTION FOR**
15 | ACS EDUCATION CORP., et al.,              )   **DEFAULT**
                                              )
16 |               Defendants.                 )   **[Doc. Nos. 96, 98, 102, 103, 115, 119, 121,**
                                              )   **194, 201, 203, 204, 227, 234, 240 and 256]**
17 | _____ )

18 |        Presently before the Court are twelve motions to dismiss Plaintiffs' Second Amended Complaint

19 | ("SAC"),[1] filed by the following Defendants:

20 |        1.      Experian Information Solutions, Inc. ("Experian") (Doc. No. 96);

21 |        2.      Trans Union LLC ("Trans Union") (Doc. Nos. 98 and 201);

22 |        3.      National University (Doc. 102);

23 |        4.      Coast Professional Inc., Shelley Johnston ("Coast" and "Johnston" respectively)

24 |                (Doc. No. 103);

25 | _____

26 |        [1] Since the SAC did not materially alter the claims from the First Amended Complaint, but
     merely added new Defendants or Defendants previously dismissed by the Court for want of prosecution,
27 | the Court construed the following motions to dismiss, [Doc. Nos. 96, 98, 102, 103, 115, 119] and the
     motion for judgment on the pleadings, [Doc. No. 121], as motions on the SAC in an effort to avoid the
28 | needless refiling of the these motions.

5.      Catherine Barnhill ("Barnhill") (Doc. No. 115);

6.      ACS College Loan Corp., ACS Education ("ACS"); and ACS Employees "Lotoya" and "Justin" (Doc. No. 119);

7.      California Student Aid Commission (Doc. No. 203);

8.      Educational Credit Management Corporation ("ECMC") (Doc. No. 204);

9.      Equifax Information Services LLC ("Equifax") (Doc. Nos. 121 and 234);[2]

10.     JPMorgan Chase & Co. ("JPMorgan") (Doc. No. 240).

Also before the Court is the motion to compel arbitration by Defendants First Bank of Delaware, Tribute and Jefferson Capital Systems, LLC (Doc. No. 227). For the reasons set forth below, the Court **GRANTS** the Defendants' motions to dismiss the SAC and the motion to compel arbitration

### *Procedural Background*

On September 10, 2010, Plaintiff sought and received leave to file a complaint against several defendants including Experian.[3] (Doc. No. 2.) Plaintiff's original complaint alleged constitutional violations under 42 U.S.C. § 1983 and racketeering or debt collection activity in violation of 18 U.S.C. § 1962 of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  Defendants filed motions to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. Nos. 5, 6, 11.) While those motions were pending, Plaintiff filed a motion for leave to file an amended complaint and the Court granted Plaintiff's motion. (Doc. No. 84.) Plaintiff filed his First Amended Complaint ("FAC") on February 15, 2011. (Doc. No. 88.)

Plaintiff's FAC alleges violations of the Fair Credit Reporting Act as well as a RICO claim. [Doc. No. 88.] On March 2, 2011, the Court ordered Plaintiff to effectuate proper service on any

---

[2] Doc. No. 121 was filed as a motion for judgment on the pleadings, however, a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6).

[3] Plaintiff Alfred Banks was a frequent plaintiff in this district. On January 28, 1997, the Court entered an order outlining the history of Plaintiff's litigation in this district and "enjoin[ing] Plaintiff from filing future lawsuits under 42 U.S.C. § 1983 before any judge of the court without first seeking leave from the chief judge." *Banks v. Bank of Commerce*, S.D. Cal. Misc. Case No. 95-0077, Order Modifying Pre-Filing Order After Vacatur and Remand By the Ninth Circuit Court of Appeals (Keep, C.J.). (*See* Doc. No. 2.)

10CV1886

1   defendant not previously served within 60 days.[4] [Doc. No. 100.] On May 24, 2011, the Court issued an

2   Order to Show Cause to the Plaintiff to appear on June 7, 2011, before Judge Battaglia and show cause

3   why the Court should not dismiss his case against any Defendant not properly served in accordance with

4   Rule 4 of the Federal Rules of Civil Procedure and the Court's March 2, 2011 Order. At the hearing, the

5   Plaintiff failed to demonstrate that he had effectuated proper service with regard to several Defendants,[5]

6   and the Court dismissed those Defendants without prejudice for want of prosecution. [Doc. No. 167].

7           On July 13, 2011, the Court issued an Order, [Doc. No. 178], in which the Court informed

8   Plaintiff that his service of the FAC on many of the Defendants previously identified by the Court was

9   insufficient as a matter of law.  The Court reminded the Plaintiff that he had already been warned twice

10  by the Court regarding his failure to properly serve Defendants, and the Court gave Plaintiff thirty (30)

11  days, or until August 12, 2011, to file and properly serve a SAC. The Court warned that any further

12  failure to comply with Rule 4 and effectuate proper service on any of the previously dismissed

13  Defendants would result in the Plaintiff's claims against these Defendants being DISMISSED WITH

14  PREJUDICE, without further motion by Defendants.

15          On July 19, 2011, with the Court's leave, the Plaintiff filed a SAC, [Doc. No. 179], against

16  twenty Defendants.[6]   The SAC did not alter the claims from the FAC,[7] but merely added new

17  Defendants, as well as Defendants previously dismissed by the Court for want of prosecution. Prior to

18  the filing of the SAC, certain Defendants had filed motions to dismiss the FAC, [Doc. Nos. 96, 98, 102,

19          [4] Specifically, the Defendants were JP Morgan, Kathleen Barnhill, "Charlotte," State Student Aid

20  Commission ("SSC").

21          [5] The FAC was dismissed without prejudice, for want of prosecution, as to defendants Charlette,

22  ACS Education Employee Latoya, ACS Education Employee Justin, State Student Aid Commission,
    Experian Employee Danna, Equifax Employee Ariana, Equifax Employee Larin, Procollect, Inc., First
    Bank of Delaware, Tribute and Continental Finance. Equifax, Experian Employee Danna, First Bank of

23  Delaware, JP Mogan, Procollect Inc, State Student Aid Comm., Tribute Continental Finance, ACS
    Education and Charlette terminated from case.

24
            [6] The twenty defendants names in the SAC are as follows: ACS Education Corp, Coast

25  Professional Inc., Shelley Johnston, State Student Aid Comm., JP Morgan, Experian Inc., Equifax LLC.,
    Trans Union LLC., California Student Aid Commission, National University Inc., Katherine Barnhill,

26  Educational Credit Mgmt., ACS College Loan Corp., Procollect Inc., Union Workers CS Inc., First
    Bank of Delaware, Jefferson Capital Systet, LLC., Tribute LLC., Continental Finance, 1st Bank of

27  Delaware.

28          [7] It appears that the only change made by the Plaintiff was to crossed out "First" and write
    "Second."

1  103, 115, 119, 121] and because the motions were pending when Plaintiff filed his SAC and there was

2  no material change made to the claims from the FAC, the Court construed these motions as being

3  directed to the SAC.  Additional Defendants filed motions to dismiss the SAC. [Doc. Nos. 201, 203,

4  204, 234 and 240.] Defendants Jefferson Capital Systet, First Bank of Delaware, and Tribute filed a

5  motion to compel arbitration. [Doc. No. 227.]

6  ### *Factual Background*

7    Plaintiff contends that, between August 2004 and September 2010, all Defendants knowingly

8  and willfully conspired with each other to violate the Fair Debt Collection Practices Act ("FDCPA") and

9  the Fair Credit Reporting Act ("FCRA") by acting in concert to perform several acts pertaining to

10  Plaintiffs credit information. The Plaintiff alleges that the conspiracy to violate these acts also

11  constituted violations of the RICO Act. (SAC, pp. 5-6.) Plaintiff alleges that Defendants made negative

12  credit reports regarding debts owed by Plaintiff. (SAC, p. 5.) Plaintiff contends that these debts were

13  disputed and that certain Defendants were therefore in violation of the FDCPA for reporting them to

14  credit agencies. (SAC, pp. 6-34.) The Plaintiff also contends that the Defendants who are named as

15  credit reporting agencies breached their obligations under the FCRA to investigate Plaintiffs complaints

16  about inaccuracies in the credit reports they created and published. The Plaintiff alleges that the

17  Defendant Credit Reporting Agencies also failed to correct errors and to record the fact that the debts

18  were disputed. (SAC, pp. 6-34.) The Plaintiff also sets out the alleged history of his attempts to get the

19  information deleted from his credit reports. (SAC, pp. 7-34.)

20    The Plaintiff asserts his credit has been damaged, which has resulted in the denial of

21  unemployment benefits. He also attributes the death of his sister and brother in Africa to the negative

22  credit reports.  The Plaintiff contends that due to the negative credit information, he was not able to get a

23  loan that would enable him to travel to Africa to help his family and pay hospital bills. (SAC, pp. 13, 14,

24  & 33.) The SAC alleges that negative credit reports caused the Plaintiff to slip into depression and to

25  lose self-confidence and self-esteem. (SAC, pp. 12-13, 34.) The Plaintiff states that he needed help to

26  pay rent in order to avoid becoming homeless. (SAC, p. 13.) The Plaintiff also claims he has lost profits

27  in his business as a result of Defendants' actions. (SAC, p. 20.)

28

### *SAC Claims*

Plaintiff's first claim alleges Defendants "conspired and agreed among themselves to violate" several statutes. (SAC at p. 5.) The SAC alleges several Defendants negatively reported credit balances of varying amounts, and continued to provide negative reports "after all money had been paid in full." (*Id*. at pp. 5-7.) The SAC alleges these defendants "[p]resented an inaccurate negative report" to Experian as well as consumer reporting agencies Experian, Trans Union and Equifax. (*Id*.) On June 14, 2010, the SAC alleges, Plaintiff wrote to Experian, Trans Union and Equifax requesting a reinvestigation of at least one negative report item. (*Id*. at p. 7.) Plaintiff alleges defendants "have a policy, custom [a]nd practice" of violating the federal Fair Credit Reporting Act and "Continue Negative Reporting intentional to cost damage to Plaintiff's record" (sic). (*Id*. at p. 6.)

Plaintiff's second claim appears to arise from disputes with defendant Coast Professional and possibly defendant National University regarding a consolidation/refinance of student loans. (*Id*. at pp. 7-11.) Rather, Plaintiff's second claim appears to allege violations by Coast Professional such as "fail[ing] to keep their promise [that] All the Negatives credit reports related to the Student Loan will be deleted and plaintiff will be able to get new loan to continue his Education" (sic). (*Id*. at p. 10.)

The paragraphs styled as Plaintiff's third claim for relief set forth miscellaneous facts regarding matters including Plaintiff's family, the dispute with Coast Professional that forms the basis of Plaintiff's second claim, and charges for insufficient funds and late payments imposed by an unnamed bank.

Plaintiff's fourth claim appears to arise from disputes with individual consumer lenders regarding account balances, late payment fees, over limit fees, finance charges and other fees. (*Id*. at pp. 14-15.) This claim also references a negative report by Continental Finance, *see* SAC at p.16.

Plaintiff's fifth claim alleges he disputed negative items with Experian, Trans Union and Equifax because Plaintiff's creditors "agree[d] to delete all negative report[s] if payment is made in full." (FAC at p. 16.) Plaintiff wrote letters to Experian, Trans Union and Equifax stating, "I never sign[ed] four Student Loan check[s]," and requesting copies of unspecified cancelled checks. (*Id*. at pp. 16-17.)

Plaintiff's sixth claim alleges Defendants engaged in a "pattern of racketeering activity." (*Id*. at p. 19.) Referencing the allegations in his first through fifth claims, Plaintiff alleges Defendants' conduct

10CV1886

"was done on the basis of the fact that Plaintiff is Black and is representing himself." (*Id.*) Plaintiff alleges Defendants engaged in a "continuing conspiracy" in violation of RICO, 18 U.S.C. §§ 1962(a)-(d). (*Id.*) Subsequent pages of the SAC are styled as a "RICO Case Statement" pursuant to a general order which, at least at the present time, does not exist within this district. (*Id.* at pp. 20-33.) This portion of the SAC appears to reallege the same matter pled in the first through fifth claims, this time with citations to 18 U.S.C. § 1961(6), which defines "unlawful debt" for purposes of RICO. (*E.g., Id.* at p. 23.)

The Plaintiff seeks $12 million in general damages, $50,000 in special damages, and $2 million in punitive damages. He also seeks to have the damages trebled. The Plaintiff requests an injunction requiring all negative credit information to be deleted from his credit reports. He asks for an order compelling Experian, Trans Union, and Equifax to update his credit score to 800. (SAC, p. 35.)

### ***Legal Standards***

### I.    *Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings, and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim."  *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).  It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1929.  The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing

1  all reasonable inferences in favor of the nonmoving party.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th

2  Cir. 2009) (citations omitted).

3  ## II.   *Federal Rule of Civil Procedure 12(c)*

4          A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject

5  to the same standard of review as a motion to dismiss under Rule 12(b)(6); "[t]here is no material

6  difference in the applicable legal standards" and they are "functionally identical." *Beckway v. DeShong*,

7  717 F. Supp. 2d 908, 913 (N.D. Ca. 2010) (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188,

8  1192 (9th Cir. 1989)). To survive a motion to dismiss, "a complaint must contain sufficient factual

9  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ---

10  U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

11  (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

12  draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a

13  complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line

14  between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (citations and

15  internal quotation marks omitted).

16                                             ## *Discussion*

17          Although the SAC, [Doc. No. 179], is divided into six claims for relief, the Plaintiff appears to

18  rest his requests for relief on the following statutory schemes: (1) the Racketeer Influenced and Corrupt

19  Practices Act ("RICO") (18 U.S.C. § 1962 et seq.); (2) the Fair Credit Reporting Act ("FCRA") (15

20  U.S.C. § 1681 et seq.); (3) California's Consumer Credit Reporting Agencies Act ("CCRAA"); (4) the

21  Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692 et seq.); and (5) other federal statutory

22  claims. (SAC, pp. 2-4.) The Defendants have moved to dismiss Plaintiff's SAC on the grounds that the

23  SAC fails to state a claim upon which relief can be granted.  Each of these causes of action is addressed

24  in turn below.  As a preliminary matter, however, the Court will first address the issue of proper service

25  of the SAC.

26  ## I.   *Service of Process Pursuant to Rule 4*

27          As the Court explained to the Plaintiff at the hearing on the Order to Show Cause on June 7,

28  2011, this Court cannot exercise jurisdiction over a defendant without proper service of process pursuant

to Rule 4 of the Federal Rules of Civil Procedure. The Court previously dismissed Defendants Charlette, ACS Education Employee Latoya, ACS Education Employee Justin, State Student Aid Commission, JP Morgan, Experian Employee Danna, Equifax Employee Ariana, Equifax Employee Larin, Procollect, Inc., First Bank of Delaware, Tribute and Continental Finance for failure to properly serve these Defendants with the initial Complaint or the FAC. *See* Order of July 13, 2011, Doc. No. 178, at 3. The Court gave Plaintiff until August 12, 2011, to file and serve his SAC.  The Court warned Plaintiff that any further failure to comply with Rule 4 and effectuate proper service on any of the Defendants previously dismissed on these grounds, would result in the Plaintiff's claims against these Defendants being DISMISSED WITH PREJUDICE without further motion by Defendants.

The SAC has deleted some of these previously dismissed Defendants from the caption, but still refers to them in the body of the SAC.[8]  With regard to these Defendants Charlette, ACS Education Employee Latoya, ACS Education Employee Justin, Experian Employee Danna, Equifax Employee Ariana, and Equifax Employee Larin, the Court's review of the record reveals no evidence that these Defendants have ever been properly served with any of the complaints since this case was first filed on September 10, 2010.  Based upon the foregoing and the Court's prior warnings, Defendants Charlette, ACS Education Employee Latoya, ACS Education Employee Justin, Experian Employee Danna, Equifax Employee Ariana, and Equifax Employee Larin are hereby DISMISSED WITH PREJUDICE.

Of the remaining Defendants not previously served and twice dismissed for lack of proper service, the Plaintiff has not provided any evidence that an attempt was made to serve Defendant State Student Aid Commission. Based upon the foregoing and the Court's prior warnings, Defendant State Student Aid Commission is hereby DISMISSED WITH PREJUDICE.

Defendant JP Morgan has filed a motion to quash service and dismiss the complaint, [Doc. No. 240], challenging Plaintiff's service of process on two grounds, the first attacking the form of the proof of service and the second challenging the manner in which service was attempted. Fed. R. Civ. P. 12(b)(4) and 12(b)(5).  Defendant JP Morgan contends that the Plaintiff improperly attempted to serve Ashley Rader, an employee of one of JPMorgan's subsidiaries, JPMorgan Chase Bank, N.A., on August

---

[8] The Defendants that were deleted from the caption, but that still appear in the body of the SAC are: Charlette, ACS Education Employee Latoya, ACS Education Employee Justin, Experian Employee Danna, Equifax Employee Ariana, and Equifax Employee Larin.

26, 2011, two weeks after this Court's deadline. Further, JPMorgan Chase Bank, N.A. and Ms. Rader are not registered agents of JPMorgan, the defendant and holding company. Nor have they been authorized to accept service of process in this litigation for JPMorgan or any JPMorgan affiliated entity. Based upon the foregoing and the Court's prior warnings, JP Morgan's motion to quash service is hereby GRANTED and JP Morgan is hereby DISMISSED WITH PREJUDICE.

## II. *Plaintiff's RICO Claims*

The Plaintiff alleges a conspiratorial pattern of racketeering activity by Defendants, as defined in 18 U.S.C. §§ 1962(a) through (d). The Plaintiff contends that Defendants violated these provisions by supplying the credit-reporting-agency Defendants with information about Plaintiffs debts. The credit-reporting-agency Defendants allegedly violated the provisions by failing to correct inaccuracies in credit reports. (SAC, pp. 3-34.) Section 1962 sets forth four categories of "prohibited activities" under RICO:

• Section 1962(a) prohibits a person who has received income "from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal" from using or investing such income to acquire, establish, or operate an enterprise affecting interstate or foreign commerce.

• Section 1962(b) provides it is "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt" to acquire or maintain interest or control of an enterprise affecting interstate or foreign commerce.

• Section 1962(c) prohibits a person associated with any enterprise affecting interstate or foreign commerce from conducting such enterprise's affairs "through a pattern of racketeering activity or collection of unlawful debt."

• Section 1962(d) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)" of Section 1962.

Section 1964 provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).  As the statutory language makes clear, to state a claim under any of Section 1962's four subsections, a plaintiff must allege "a pattern of racketeering activity" or "collection of an unlawful debt," as well as a RICO "enterprise." *See Sedima,*

10CV1886

1  *S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th

2  Cir. 2007).

3       The Plaintiff's SAC fails because it does no more than parrot the legal conclusions "racketeering

4  activity," "unlawful debt" and "enterprise," which the Court cannot accept as true on a motion to

5  dismiss. *Iqbal*, 129 S.Ct. at 1949. First, Plaintiff fails to adequately allege Defendants engaged in any

6  "racketeering activity" within the meaning of RICO. 18 U.S.C. § 1961(1), which lists the predicate acts

7  that qualify as "racketeering activity" (e.g., murder, kidnapping, witness tampering, mail fraud).  The

8  SAC does not allege Defendants committed any such acts, let alone a "pattern" of them. 18 U.S.C. §

9  1962(c). The Plaintiff attempts to predicate his RICO claim on an alleged "continuing conspiracy to

10  violate the consumer credit accuracy and fairness of credit reporting Act," but such violations do not

11  constitute "racketeering activity" as defined by Congress. 18 U.S.C. § 1961(1). The Court finds that the

12  Plaintiff has alleged no facts to support the label "racketeering activity," the Court concludes that the

13  SAC falls well short of the pleading standards imposed by the Federal Rules. *See Twombly*, 550 U.S. at

14  555.

15       Furthermore, Plaintiff's SAC fails to adequately allege Defendants engaged in the "collection of

16  unlawful debt." *See* 18 U.S.C. § 1961(a)-(d). For purposes of RICO, an "unlawful debt" is one incurred

17  in connection with illegal gambling activity or unenforceable because of federal or state usury laws. 18

18  U.S.C. § 1961(6).  The SAC uses the phrase "unlawful debt(s)" no fewer than seventeen times, and

19  makes nearly as many references to 18 U.S.C. § 1961(6), which defines the term "unlawful debt" for

20  purposes of the RICO statutes. (*See id.* at pp. 21-30.) Plaintiff's SAC, however, alleges no facts

21  supporting the conclusory assertion that Defendants "report[ed] negative of unlawful debt on plaintiff's

22  record as that term is defined by Title 18, United Stat[e]s Code Section 1961(6)" (sic). (FAC at p. 23.)

23       Finally, while Plaintiff's SAC uses the word "enterprise" several times, it alleges no facts and

24  therefore fails to "raise a right to relief above the speculative level." See SAC at pp. 21; *Twombly*, 550

25  U.S. at 555. The Court finds the bare assertions and conclusory statements of Plaintiff's SAC to be

26  exactly the type of threadbare recital of the elements of a cause of action, that does not suffice to state a

27  cognizable claim. *Iqbal*, 129 S. Ct. at 1949. Based upon the foregoing, the Defendants' motion to

28

1  dismiss the Plaintiff's RICO claims set forth in the SAC pursuant to Federal Rule of Civil Procedure

2  12(b)(6) is GRANTED WITH LEAVE TO AMEND.

3

**III.    *Plaintiff's FCRA Claims Against Credit Reporting***

4          ***Agencies Experian, Equifax and Trans Union***

5          Plaintiff's FCRA claims against the Credit Reporting Agencies, Experian, Equifax and Trans

6  Union rests on a legal theory the Ninth Circuit recently confirmed is invalid as a matter of law. The

7  FCRA requires consumer reporting agencies like Experian to "conduct a reasonable reinvestigation" of

8  information disputed by a consumer. 15 U.S.C. § 1681(i)(a)(1)(A) provides:

9          Subject to subsection (f) of this section, if the completeness or accuracy of any
           item of information contained in a consumer's file at a consumer reporting agency
10         is disputed by the consumer and the consumer notifies the agency directly, or
           indirectly through a reseller, of such dispute, the agency shall, free of charge,
11         conduct a reasonable reinvestigation to determine whether the disputed
           information is inaccurate and record the current status of the disputed
12         information,
           or delete the item from the file in accordance with paragraph (5), before the end
13         of
           the 30-day period beginning on the date on which the agency receives the notice
14         of the dispute from the consumer or reseller.

15         A recent Ninth Circuit decision applying both the federal FCRA and California's Consumer

16 Credit Reporting Agencies Act ("CCRAA") illustrates the critical distinction between (i) plaintiffs who

17 claim their credit information was inaccurately reported and (ii) plaintiffs who simply dispute the legal

18 validity of their underlying debts. *Carvalho v. Equifax Info. Svcs.*, 629 F.3d 876, 891-92 (9th Cir. 2010).

19 The Ninth Circuit emphasized "credit reporting agencies are not tribunals." *Id.* at 891. Consumer

20 reporting agencies "simply collect and report information furnished by others" and, "[b]ecause CRAs

21 are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount

22 collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.*

23 (citing *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008). The Ninth

24 Circuit concluded:

25

26         A CRA is not required as part of its reinvestigation duties to provide a legal
           opinion on the merits. Indeed, determining whether the consumer has a valid
           defense [to a reported debt] is a question for a court to resolve in a suit against the
27         creditor, not a job imposed upon consumer reporting agencies by the FCRA.

28

1    Based upon the foregoing, the Court finds that the Plaintiff has failed to allege a cognizable

2    FCRA claim against the Defendant Credit Reporting Agencies Experian, Equifax and Trans Union.

3    Adjudicating the dispute(s) between Plaintiff and any of his creditors "is a question for a court to resolve

4    in a suit against the creditor, not a job imposed upon consumer reporting agencies by the FCRA."

5    *Carvalho*, 629 F.3d at 892. As the First Circuit stated in a decision quoted approvingly in *Carvalho*, a

6    dispute over the validity of an underlying debt "is not a factual inaccuracy that could have been

7    uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency is neither

8    qualified nor obligated to resolve under the FCRA." *DeAndrade*, 523 F.3d at 68.  Based on the

9    foregoing, the Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.

10   **IV.   *Plaintiff's FDCPA Claims***

11   Plaintiffs' cause of action for violation of the FDCPA against Defendants fails because

12   Defendants are not considered debt collectors or engaged in debt collecting under the FDCPA. An entity

13   is not deemed a debt collector under the FDCPA if the debt it seeks to collect was not in default at the

14   time it obtained an interest. *Bailey v. Sec. Nat'l Servicing Corps.*, 154 F.3d 384, 387 (7th Cir. 1998). The

15   Plaintiff has failed to demonstrate or sufficiently allege any of the Defendants are debt collectors as

16   defined by FDCPA and therefore cannot state a claim. Based upon the foregoing, the Court GRANTS

17   Defendants motions to dismiss as to this claim WITH LEAVE TO AMEND.

18   **V.   *Plaintiff's Potential Claim Under the CCRAA***

19   Portions of the SAC, when construed liberally, indicate Plaintiff seeks to plead a claim under

20   California's Consumer Credit Reporting Agencies Act ("CCRAA"). (*See* SAC at pp. 2, 20 ("violations

21   of Consumer Credit Accuracy and fairness of credit Reporting Act").) Defendants argue, and the Court

22   agrees, that this claim should be dismissed for the same reason Plaintiff's federal FCRA claim fails.

23   Like the federal FCRA, the CCRAA provides a reinvestigation provision. It states in relevant part:

24       If the completeness or accuracy of any item of information contained in his or her
         file is disputed by a consumer, and the dispute is conveyed directly to the
25       consumer credit reporting agency by the consumer or user on behalf of the
         consumer, the consumer credit reporting agency shall within a reasonable period
26       of time and without charge, reinvestigate and record the current status of the
         disputed information before the end of the 30-business-day period beginning on
27       the date the agency receives notice of the dispute from the consumer or user,
         unless the consumer credit reporting agency has reasonable grounds to believe
28       and determines that the dispute by the consumer is frivolous or irrelevant,
         including by reason of a failure of the consumer to provide sufficient information,

12

1    as requested by the consumer credit reporting agency, to investigate the dispute.

2    Cal. Civ. Code § 1785.16. "After completing a reinvestigation, the CRA must provide the consumer

3    with written notice of any results, including 'a notice that, if requested by the consumer, a description of

4    the procedure used to determine the accuracy and completeness of the information shall be provided.'"

5    Carvalho, 629 F.3d at 889 (quoting Cal. Civ. Code § 1785.16(d).)

6         In *Carvalho*, the Ninth Circuit held a CCRAA claim fails as a matter of law unless the plaintiff

7    establishes the disputed items were reported inaccurately. *Id.* at 890. For the same reasons discussed

8    above, the Ninth Circuit held a plaintiff who merely disputes the legal validity of his or her debts lacks a

9    cognizable CCRAA claim. Such a plaintiff "cannot make a prima facie case of inaccurate reporting"

10   against a consumer reporting agency. *Id.* at 890, 892-93. As such, the Court finds that the Plaintiff's

11   SAC fails to state a cognizable claim under the CCRAA and therefore GRANTS Defendants motion to

12   dismiss these claims WITH LEAVE TO AMEND.

13   **VI.    *Plaintiff's Other Federal Statutory Claims***

14        The Plaintiff's SAC cites several federal statutes directed at criminal or other violent activity,

15   such as 18 U.S.C. § 1951 ("Interference with commerce by threats of violence"), 18 U.S.C. § 1958

16   ("Use of interstate commerce facilities in the commission of murder-for-hire") and 18 U.S.C. § 1959

17   ("Violent crimes in aid of racketeering activity"). To the extent the Plaintiff is attempting to allege

18   claims under any of these statutes in the SAC, the Court finds that the Plaintiff has failed to provide any

19   factual support for these claims that would "permit the court to infer more than the mere possibility of

20   misconduct," and the Plaintiff has failed to demonstrate that he has standing to bring a cause of action

21   under these statutes, making dismissal proper under Rule 12(b)(6). Based on the foregoing, the

22   Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.

23   **VII.   *Defendants' Motion to Compel Arbitration***

24        Defendants[9] filed a motion, [Doc. No. 227], arguing that the claims made by Mr. Banks are

25   subject to binding arbitration.  As set forth in the Defendants' motion, and confirmed by Plaintiff in his

26   Opposition although absent any evidence, Plaintiff applied for the Tribute Card over the Internet. The

27

28        [9] Defendants who filed the motion to compel arbitration, [Doc. No. 227], are First Bank of Delaware ("FBOD"), Jefferson Capital Systems, LLC ("Jefferson") and Tribute (which is not an actual entity but rather a trade name used by FBOD in connection with the credit card product).

1    Plaintiff concedes that he was issued the card. Opp., Doc. No. 241, at 7. While Plaintiff argues in his

2    opposition that he did not agree to arbitration, there is no credible or admissible evidence submitted by

3    Mr. Banks on that issue. Defendants have established via the Declaration of Claressa Duberry that the

4    Credit Card Agreement was sent to Plaintiff in connection with the delivery of his Tribute credit card

5    and that the Credit Card Agreement included an Arbitration Provision.

6          The Plaintiff argues that Mr. Banks' argument that his claims are not subject to the Arbitration

7    Provision is unavailing. A court must compel parties to arbitrate claims, including statutory claims,

8    which fall within the arbitration agreement. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90

9    (2000)(the Supreme Court has "recognized that federal statutory claims can be appropriately resolved

10   through arbitration and [has] enforced agreements to arbitrate that involve such claims"). In this case,

11   the Arbitration Provision provides that "Any claim, dispute or controversy (whether in contract, tort, or

12   otherwise) at any time arising from or relating to your Account, any transferred balances or this

13   Agreement (collectively, "Claims") upon the election of you or us, will be resolved by binding

14   arbitration pursuant to this Arbitration Provision." All of the Plaintiff's claims, no matter how

15   characterized, are therefore subject to arbitration.[10]

16         The Court finds the Plaintiff's waiver arguments unavailing because the Plaintiff has not

17   demonstrated (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that

18   existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.

19   *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).  The Plaintiff has failed to

20   demonstrate how making collection calls or selling a credit card account, acts which have been alleged

21   by Plaintiff, are inconsistent with the right to demand or compel arbitration. Furthermore, there has been

22   no showing by Plaintiff that he has been or will be prejudiced by the fact that moving Defendants did

23

24

25   _____

26   [10] Even though Jefferson is not a signatory to the Arbitration Provision between Plaintiff and
     FBOD, Jefferson is entitled to seek arbitration of Plaintiff's claims. It is well-settled that non-signatories
27   to an agreement may be bound under ordinary contract and agency principles. *Letizia v. Prudential
     Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (citing *Alyeska Pipeline Serv. Co. v.
28   International Bhd. of Teamsters*, 557 F.2d 1263, 1267 (9th Cir. 1977) (local union bound by arbitration
     clause in its collective bargaining agreement even though it did not represent the particular employees
     involved in picketing activities at the time the agreement was signed)).

not seek arbitration prior to August 31, 2011. Based upon the foregoing, the Court hereby GRANTS the Defendants motion and ORDERS the claims set forth in the SAC against these moving Defendants be submitted to arbitration.

### *Conclusion*

For the reasons set forth above, the Court finds that the SAC lacks specificity. The Court finds the SAC to be vague, conclusory and devoid of any merit or substance with regard to many of these Defendants. As such, the Court hereby GRANTS the Defendants motions to dismiss, [Doc. Nos. 96, 98, 102, 103, 115, 119, 121, 201, 203, 204, 234, 240] and GRANTS the Defendants motion to compel arbitration, [Doc. No. 227].  The Plaintiff's Plaintiff's ex parte application, [Doc. No. 194], is GRANTED as set forth above, and the Plaintiff's motion, [Doc. No. 256], for default judgment as to Defendant Procollect is DENIED. Plaintiff's ex parte application filed on August 9, 2011, for additional time to serve Defendant Jefferson Capital and "other Defendants" is DENIED AS MOOT. Defendants Charlette, ACS Education Employee Latoya, ACS Education Employee Justin, Experian Employee Danna, Equifax Employee Ariana, Equifax Employee Larin, State Student Aid Commission, and JP Morgan are DISMISSED WITH PREJUDICE.

While the Court has granted the Defendants' motions to dismiss without prejudice and with leave to amend, the Plaintiff is warned that failure to sufficiently state his claims and provide the necessary factual support will result in this Court dismissing his claims with prejudice. The Plaintiff must file his Third Amended Complaint ("TAC") on or before April 27, 2012, and it must remove those Defendants that have been dismissed with prejudice.  The Plaintiff must timely serve all Defendants with the TAC in compliance with Rule 4.  The Plaintiff is warned that failure to do so will result in this Court dismissing any unserved or untimely served Defendants with prejudice.

IT IS SO ORDERED.

DATED:  March 26, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge

10CV1886